RECTIGRAPH CO. v. CAMERAGRAPH CO.

(Circuit Court of Appeals, Eighth Circuit. May 8, 1916.)

No. 4513.

PATENTS ☜328—VALIDITY AND INFRINGEMENT—COPY-HOLDER.

The Beidler patent, No. 793,978, for a copy-holder, especially adapted for the holding of record books, claims 1, 2, 3, and 8, are void for anticipation; claims 5 and 9, conceding their validity, *held* not infringed.

Appeal from the District Court of the United States for the Western District of Missouri; Arba S. Van Valkenburgh, Judge.

Suit in equity by the Rectigraph Company against the Cameragraph Company. Decree for defendant, and complainant appeals. Affirmed.

Frank S. Appleman, of Washington, D. C., for appellant.

James L. Norris, Jr., of Washington, D. C. (John S. Powers, of Washington, D. C., on the brief), for appellee.

Before ADAMS and CARLAND, Circuit Judges, and TRIEBER, District Judge.

ADAMS, Circuit Judge. This was a suit in equity to restrain infringement of United States letters patent No. 793,978, issued to George C. Beidler, July 4, 1905, for alleged new and useful improvements in copy-holders. The object of the invention, as stated in the specification, is this:

"To afford a more convenient and satisfactory means of holding documents from which copies are to be made, and while the improvements herein shown may be used for general copying, the invention is made more especially adaptable to the copying of deeds, mortgages, and other documents which are filed in and have to be copied from record books. The improved holder is made adaptable to the use of the camera in copying. * * *"

The patent has 16 claims, but only the first, second, third, fifth, eighth, and ninth are now involved. These are as follows:

(1) "In a copy-holder, a suitable base, a case hinged to the base, means for holding the copy, and adjustable means for permitting the copy to lie on a given plane."

(2) "In a copy-holder, a suitable base, a movable case supported by the base, and yieldable copy-supports in the case whereby the copy is exposed on a predetermined plane."

(3) "In a copy-holder, a base, a case supported thereby, copy-supports in the case, means for permitting the yielding of the copy-supports and means for holding the copy in engagement with the supports."

(5) "In a copy-holder, a case, copy-holders movable in the case, whereby the copy is permitted to be exposed on a predetermined plane, clamping members coacting with the copy-holders and means for operating the clamping members."

(8) "In a copy-holder, a case, means in the case for supporting a book in its open position, means for holding the book on the supports and means for permitting the exposed leaves of the book to lie on the same plane."

(9) "In a copy-holder, a case, book-supporting means in the case, clamping

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

members acting in conjunction with the supports, and means for operating the clamping members whereby the copy engaged by each set of clamping members is pressed to line on the same plane."

The defense was want of patentable novelty and non-infringement. The court below held claims 1, 2, 3, and 8 to be invalid, and claims 5 and 9 to be valid, but not infringed, and rendered a decree dismissing the bill. From this decree the complainant below (appellant here) appeals.

Claims 1, 2, 3, and 8 are concerned solely with a substantial base or stand upon which a case, so equipped and disposed as to properly and firmly hold large record books while being copied and coacting means for their successful operation. The case is a shallow box of about the length, width, and thickness of a large open record book standing normally in an upright or vertical position with no frontal covering.

The case is hinged upon the back edge of the base or stand in such way as to permit the case to be tilted backwards from its normal vertical position as and when required for preparing the device for operation. Extending vertically across the front or face of this case are two thin strips of wood, called "copy-supports" or "follow-blocks," each supported underneath by a flat bow spring.

Neither of these claims, 1, 2, 3, or 8, call for any special or definite *means* to be employed for the operation of the device, but call generally for means for holding the copy and permitting it to lie on a given plane, and for means for permitting the yielding of the copy-supports and holding the copy in engagement with the supports, and means for supporting the book in its open position and holding it on the supports. Claims 5 and 9 call for the foregoing elements and in addition thereto the following:

"Clamping members coacting with the copy-holders and means for operating the clamping members" and "clamping members acting in conjunction with the supports, and means for operating the clamping members whereby the copy engaged by each set of clamping members is pressed to line on the same plane."

The *"means"* described in the specification or shown in the drawings of the patent for accomplishing the object of the invention, to which all the claims, without specifically calling for them, in a general way refer, are a revolvable vertical shaft firmly secured upon the outside of and at each end of the case, extending from its top to its bottom, pivotally mounted at each end by lugs firmly secured to the ends of the case. A series of short steel rods, called "fingers," are rigidly mounted upon these shafts so as to rise and fall with their revolution. The upper end of the shafts are provided with rigid crank arms, the free ends of which are operatively connected by rods or links to a hand lever mounted upon the back of the case. The operation of the device is practically this:

The hand lever on the back of the case, connected with the shafts as just stated, when pushed forward, revolves the shafts and raises the fingers so as to clear the front of the case for the reception of a book or document which is desired to be copied. After the front

of the case is thus made clear, the book is put into it, the back of each cover resting upon one of the "copy-supports" or "follow-blocks." The hand lever is then pushed forward, and the fingers, by the resulting revolution of the shafts, are brought firmly down upon the open pages of the book, thereby pressing them firmly against the yielding copy-supports and presenting a flattened smooth plane to the copyist.

So it appears that the device shown in the first group of claims, 1, 2, 3, and 8, consists simply of a case or box, hinge-mounted on a supporting pedestal, having an open front through which the leaves of a book desired to be copied are exposed to view, devices projecting over and engaging the exposed leaves when the book is in place, so as to hold them in a predetermined plane, and spring-pressed copy-supports which engage the covers of the book and press them up against the clamping members, these supports being arranged between the book and the rear wall of the case.

By reason of the use of these words in the specification:

"The improved holder is made adaptable to the use of the camera in copying. * * *"

Counsel for appellant make an argument that there should be read into the claims of this patent a camera or other photographic instrument so disposed in front of the exposed pages of the book as to permit of a quick photographic reproduction of them. In other words, they argue that the court should interpose in their behalf and permit them now to make a claim for a combination which the patentee never made or never secured a patent for. This, most obviously, cannot be done. With the camera left out, the combination of the claims is for the few simple elements already pointed out only, with means, already specified, for their operation. Does such a combination disclose a new and useful invention within the meaning of the patent law, or had it been anticipated?

The prior art relied upon by the defendant discloses patents covering, as the trial court found and as we find, reading desks, writing desks, book-supports and copy-holders, which involve and include, in one form or another, all the elements (or their substantial equivalents) enumerated in the first group of claims under consideration. The purpose disclosed in the patents of the prior art was to so dispose the copy-holder that the book or document might be conveniently written upon, read or copied from. They disclosed means for holding the book or copy vertically, horizontally, or otherwise, best suited to the needs of the reader or copyist. In them are found a base, and a case, supported by, attached to and specifically hinged to the base, all disclosing means for holding the copy (in most cases books and in some cases record books) so that the pages exposed for copying lie in a given plane, this result being attained by cams or springs, or their equivalents, whereby the book supports were made movable and yieldable. The prior art, therefore, disclosed combinations of elements, or their equivalents, substantially like those involved in the Beidler pat-

ent in suit, and performing the same function in substantially the same way.

In the Moessinger patent, No. 95,369, dated September 28, 1869, and in the Rogers patent, No. 640,226, dated January 2, 1900, are found elements, and combinations of elements, and "means" strongly suggestive, if not quite anticipatory, of the claims of this patent; and in the Nevius patent, No. 742,347, dated October 27, 1903, is found a further development of this art in the shape of a device which, in our opinion, fully anticipates the claims and combination of claims of this patent. The claims, specification, and drawings of that patent disclosed a book-holding device, consisting of a base, a book-holding case hinged upon the base, adjustable book supports inside the case, with connections and means for raising and lowering the supports, corresponding to the follow blocks of the Beidler patent, and leaf engaging rods or fingers corresponding or equivalent to the fingers of the Beidler patent, all in connection with means disclosed in the specification designed to furnish an adjustable provision for making the book lie in a given or predetermined plane while being copied. Other patents and devices are relied upon by counsel for the parties in support of their respective contentions concerning the prior art; but in view of the consideration of the prior art already had, and the necessary conclusion therefrom that the Beidler patent had been anticipated, we refrain from further exploitation of it.

We now pass to a consideration of claims 5 and 9. The device of these claims consists essentially of clamping members and means for operating them in connection with a copy-holder. These clamping members, as already described, consist of the revolvable vertical shafts secured to the ends of the case, extending from its top to its bottom, and the steel rods or fingers mounted upon them, in such way as to rise and fall with their revolution, and operated by means of the hand lever at the back of the case connected with crank arms operating upon the upper ends of the shaft in such way that by pushing the lever back the fingers, constituting the clamping members, are raised so as to open up the case for the reception of a book to be copied and by pulling the lever forward the fingers, by the resulting revolution of the shaft, are brought down upon the pages of the book, thereby pressing them firmly against the copy-supports, thus presenting an even, flat and smooth surface for the copyist.

This device, it may be conceded (but not decided), constitutes a new and useful improvement or method of putting the book in place and holding it in place for effective copying, and it may be conceded for the present purpose that it involves patentable novelty; but the important question, in view of the judgment below, is whether the defendant infringed this device. The defendant's device, charged to be an infringement of claims 5 and 9, consists of a pedestal supporting a shallow case, having an open front and spring-supported plates or cross-pieces, extending vertically up and down its front, serving practically the same purpose in a copy-holder as the copy-supports of the Beidler patent. But there are no revolvable vertical shafts to which

fingers are so attached as to rise or fall with their revolution, like the Beidler patent, or subject to be operated mechanically in the way and manner already pointed out. Instead of the fingers of the Beidler patent, susceptible of quick application to the leaves of the book by the mechanical means disclosed in the Beidler patent, the defendant employs the device of the Ellis patent, No. 978,719, dated December 13, 1910, which, instead of the clamping members and their means of operation as claimed and described in the Beidler patent, employs a hand operated skeleton door, hinged to one end of the case, with means for locking or firmly closing it at the other end. This door is made up of an upper and lower cross-piece or member; between these members is an open space which permits free and unobstructed vision of the pages of the book interposed there to be copied. When the book is placed in position upon the spring-supported plates the natural operation of the springs forces the leaves of the book up against the transverse cross-pieces of the skeleton door, when locked, and in this way the cross-pieces hold the leaves of the book in a given or predetermined plane so as to be conveniently copied.

It is unnecessary for our present purpose to institute any critical comparison between these devices for the purpose of determining their respective merits. It is sufficient to consider their construction so far, and so far only, as to determine whether the defendant's structure employs the clamping members of the 5 and 9 claims of the Beidler patent or their mechanical equivalents in connection with the copy-supports of that patent, for the purpose of keeping the two pages of a book while being copied pressed to line on the same plane. We are clearly of opinion that the defendant's structure does not employ these elements or their mechanical equivalents for any purpose.

The trial court was right in holding that the defendant structure did not infringe claims 5 and 9 of plaintiff's patent. Its decree is accordingly affirmed.